**Bradley WASHBURN, Appellant**

v.

**STERLING MCCALL FORD, Appellee**

**NO. 14-16-00459-CV**

Court of Appeals of Texas,
Houston (14th Dist.).

Opinion filed May 23, 2017

DaSean Jones, Houston, TX, for Appellant.

Andrew Harald Sharenson, Houston, TX, for Appellee.

Panel consists of Justices Christopher, Jamison, and Donovan.

## OPINION

Martha Hill Jamison, Justice

In two issues, appellant Bradley Washburn challenges the trial court's grant of summary judgment in favor of appellee Sterling McCall Ford as to Washburn's Texas Deceptive Trade Practices Act (DTPA) claims.[1] We conclude that Sterling McCall conclusively established its entitlement to summary judgment as to these claims and affirm.[2]

1. *See* Tex. Bus. & Com. Code §§ 17.41-.63.

2. Although Washburn notes that he also brought claims for negligence and breach of contract, he does not challenge the trial court's grant of summary judgment as to these claims.

3. The entire section of the Buyers Guide addressing the manufacturer's warranty reads as follows:

MANUFACTURER'S WARRANTY APPLIES. A manufacturer's warranty comes with the vehicle. Consult the manufactur-

### Background

Washburn purchased a used 2012 Dodge Ram truck from Sterling McCall. The salesperson told Washburn that a "lift kit" and larger tires had been installed on the truck.

Washburn received a "Buyers Guide," which indicates that "a manufacturer's warranty comes with the vehicle" and the truck was still under the "manufacturer's warranty," and instructs the buyer to "[c]onsult the manufacturer's warranty booklet for details as to warranty coverage."[3]

The manufacturer's warranty booklet includes the following limitations, in relevant part:

[Y]our warranties don't cover any part that was not on your truck when it left the manufacturing plant or is not certified for use on your truck. Nor do they cover the costs of any repairs or adjustments that might be caused or needed because of the installation or use of non-Chrysler parts, components, equipment, materials, or additives.

Performance or racing parts are considered to be non-Chrysler parts. Repairs or adjustments caused by their use are not covered under your warranties.

Examples of the types of alterations not covered are:

er's warranty booklet for details as to warranty coverage, service locations, etc. The dealership itself assumes no responsibility for any repairs, regardless of any oral statement about the vehicle. All warranty coverage comes from the manufactuer'e [sic] warranty.

Sterling McCall asserts that Washburn signed the Buyers Guide. Although there is no signature on the Buyers Guide in the record, it is initialed with what appears to be "B.W." on each page.

- installing accessories—except for genuine Chrysler/MOPAR accessories installed by an authorized Chrysler, Dodge, Jeep or Ram dealer . . .
- changing the vehicle's configuration or dimensions . . . .[4]

Approximately a month after Washburn purchased it, the truck began experiencing mechanical difficulties. Washburn took it to a Dodge dealership for repairs. He was informed by that dealership and by Chrysler's customer service that the needed repairs were not covered by the warranty because "there was a restriction on the truck."

Washburn then contacted the dealership that sold the truck to the original owner and was told that after the lift kit was installed, the original owner brought the truck in for repairs of a "drive shaft issue." Chrysler also refused to cover those drive shaft repairs under the warranty.

Washburn ultimately made the repairs at his own expense and filed the underlying lawsuit against Sterling McCall, bringing causes of action under the DTPA and for breach of contract and negligence. The trial court rendered final take-nothing summary judgment in favor of Sterling McCall.

### Discussion

Washburn challenges the trial court's grant of summary judgment as to his DTPA claims on the basis that there are fact questions regarding whether Sterling McCall (1) made a misrepresentation to Washburn that is actionable under the DTPA, (2) failed to disclose material information regarding the restriction on the warranty, and (3) engaged in an unconscionable course of action.[5]

We review a trial court's summary judgment rulings de novo. *See Mann Frankfort Stein & Lipp Advisors, Inc. v. Fielding*, 289 S.W.3d 844, 848 (Tex. 2009). In respect to traditional motions for summary judgment, such as filed here, the movant has the burden of establishing that there is no genuine issue as to any material fact and that the movant is therefore entitled to judgment as a matter of law. *Id.* (citing Tex. R. Civ. P. 166a(c)). We consider all the evidence in the light most favorable to the nonmovant, crediting evidence favorable to the nonmovant if reasonable jurors could, and disregarding contrary evidence unless reasonable jurors could not. *See Mack Trucks, Inc. v. Tamez*, 206 S.W.3d 572, 582 (Tex. 2006). If the movant meets its initial burden, then the burden shifts to the nonmovant to disprove or raise a genuine issue of material fact as to at least one of the elements of a claim or defense on which the movant seeks summary judgment. *Amedisys, Inc. v. Kingwood Home Health Care, LLC*, 437 S.W.3d 507, 511 (Tex. 2014).

Evidence raises a genuine issue of fact if reasonable and fair-minded jurors could

---

4. Only an unauthenticated portion of the Manufacturer's Warranty booklet, presented by Sterling McCall in support of its motion for summary judgment, is in the record. However, Washburn did not object to the booklet.

5. Washburn also argues that his DTPA claims are not barred under the economic loss rule, which generally precludes recovery in tort when the only economic loss to the plaintiff is the subject matter of a contract. *See MEMC Pasadena, Inc. v. Riddle Power, LLC*, 472 S.W.3d 379, 397 (Tex. App.—Houston [14th Dist.] 2015, no pet.). We do not reach this issue because we conclude that Sterling McCall conclusively established it did not violate the DTPA as alleged. We note, however, that Sterling McCall moved for summary judgment on the basis of the economic loss rule only as to Washburn's negligence claims and Washburn does not appeal the trial court's grant of summary judgment on his negligence claims.

differ in their conclusions in light of all of the summary judgment evidence. *Goodyear Tire & Rubber Co. v. Mayes*, 236 S.W.3d 754, 755 (Tex. 2007) (per curiam). When, as in this case, the order granting summary judgment does not specify the grounds upon which the trial court relied, we must affirm if any of the independent summary judgment grounds is meritorious. *See State v. $90,235*, 390 S.W.3d 289, 292 (Tex. 2013).

The DTPA applies to transactions in goods or services, and defines "goods" as "tangible chattels or real property purchased or leased for use." Tex. Bus. & Com. Code § 17.45(1); *Bradford v. Vento*, 48 S.W.3d 749, 759 (Tex. 2001). Washburn alleges three DTPA violations, that Sterling McCall (1) made false or misleading statements of fact concerning the reasons for, existence of, or amount of price reductions; (2) failed to disclose information concerning goods or services that was known at the time of the transaction with the intention to induce Washburn into a transaction into which he would not have entered had the information been disclosed; and (3) engaged in an unconscionable course of action. *See* Tex. Bus. & Com. Code §§ 17.46(b)(11), (24), 17.50(a)(3).

## I. No False or Misleading Statements of Fact Concerning Price Reductions

▮▮▮ Washburn asserts that Sterling McCall made false factual statements to him in violation of DTPA laundry list subsection (b)(11). *See id.* § 17.46(b)(11). To violate this subsection, false factual statements must be made about the reasons for, existence of, or the amount of a price reduction. *Enter.-Laredo Assocs. v. Hachar's, Inc.*, 839 S.W.2d 822, 829 (Tex. App.—San Antonio 1992, writ denied). This subsection typically is concerned with price advertising abuse. *Id.*; *see also Mother Earth Commercial Servs., Inc. v. Kerst*, No. 06-06-00103-CV, 2007 WL 2385119, at *2 (Tex. App.—Texarkana Aug. 23, 2007, no pet.) (mem. op.). Most of the abuses in this area deal with conveying the false impression in an effort to promote products and services that the seller is bankrupt, liquidating its inventory, going out of business, or losing its lease.[6] *Hachar's*, 839 S.W.2d at 829-30.

Here, Washburn alleges that Sterling McCall offered him a warranty that Sterling McCall knew was "restricted" because a lift kit had been installed on the truck.[7] Washburn did not allege that Sterling McCall made a false representation involving a price reduction. Washburn alleged only that Sterling McCall failed to disclose to Washburn that there was a restriction on the warranty.

---

**6.** Our sister court noted that these types of representations are unlawful because they convey the false impression that the seller is passing savings onto the consumer:

> Representing that goods for sale are the inventory of a bankrupt or otherwise distressed party is unlawful if untrue, since such representations convey the false impression that the seller has secured the goods at substantial savings which will likely be passed on in part to the consumer. For much the same reason, it is unlawful to falsely represent that a sale is being held because the seller is bankrupt, is liquidating

his inventory, is losing his lease, or is going out of business.

*Hachar's*, 839 S.W.2d at 829 n.6 (quoting David F. Bragg, Phillip K. Maxwell & Joe K. Longley, Texas Consumer Litigation § 3.05.011 (2nd ed. 1983)).

**7.** Washburn does not argue that he did not receive the warranty booklet or that he failed to read it. *Cf. Wyly v. Integrity Ins. Sols.*, 502 S.W.3d 901, 911 (Tex. App.—Houston [14th Dist.] 2016, no pet.) (declining to hold the defense of failure to read applicable to alleged DTPA violations for affirmative misrepresentations regarding insurance coverage).

Sterling McCall presented excerpts from Washburn's deposition in which Washburn stated that he found the truck online before going to the dealership to see it. The online advertisement did not mention the lift kit, but Washburn spoke with the salesperson about the condition of the truck and was told about the lift kit. Washburn then met with another salesperson to negotiate the price of the truck. That salesperson offered Washburn an extended warranty, which he declined to purchase. This deposition testimony thus establishes that Sterling McCall did not make any false representation involving a price reduction. In response, Washburn presented no evidence to raise an issue of fact as to this DTPA affirmative misrepresentation claim. Accordingly, Sterling McCall conclusively established that it did not make false or misleading statements of fact concerning the reasons for, existence of, or amount of any price reduction.[8]

### II. No Failure to Disclose Known Material Information ·

■■■ Washburn also alleges that Sterling McCall violated the DTPA by failing to disclose that there was a restriction on the warranty. A DTPA violation for failure to disclose requires the defendant to have known material information and have failed to bring it to the plaintiff's attention. Tex. Bus. & Com. Code § 17.46(b)(24); *Doe v. Boys Clubs of Greater Dallas, Inc.*, 907 S.W.2d 472, 479 (Tex. 1995); *Steptoe v. True*, 38 S.W.3d 213, 218 (Tex. App.—Houston [14th Dist.] 2001, no pet.). Also, a defendant has no duty to disclose material facts that it should have known but does not. *Doe*, 907 S.W.2d at 479; *Steptoe*, 38 S.W.3d at 218.

Sterling McCall presented an affidavit from Marvin Dipzinski, its Pre-Owned Sales Manager, in support of the motion for summary judgment. Dipzinski attested that Sterling McCall, as a franchised Ford dealer, does not have access to "the Chrysler Dodge Jeep Ram database to determine whether there are any restrictions on that manufacturer's warranty for a particular vehicle. Sterling McCall [ ] had no notice from the manufacturer or the seller of [Washburn's] truck that there were any restrictions on the warranty for the truck."

■■■ Washburn argues that Dipzinski's statement that Sterling McCall did not know the warranty status of the truck is "conclusory and a question of fact fit for the jury." A conclusory statement is defined as "[e]xpressing a factual inference without stating the underlying facts on which the inference is based." *La China v. Woodlands Operating Co.*, 417 S.W.3d 516, 520 (Tex. App.—Houston [14th Dist.] 2013, no pet.) (quoting *Arkoma Basin Expl. Co. v. FMF Assocs. 1990–A, Ltd.*, 249 S.W.3d 380, 389 n.32 (Tex. 2008) (citing Black's Law Dictionary 308 (8th ed. 2004))). Conclusory affidavits are not competent summary judgment evidence because they are not credible or susceptible to being readily controverted. *Id.*

Dipzinski's statements furnish the following factual information that could have been controverted: (1) Sterling McCall did not have access to Chrysler's database to determine the status of a manufacturer's warranty provided by Chrysler, and (2) Sterling McCall had been given no notice of any restrictions on the warranty for the specific truck purchased by Washburn. *See*

---

**8.** Washburn further asserts that misrepresentations under the DTPA do not require a showing of a culpable mental state as do misrepresentations for purposes of a fraud claim. However, we need not reach that issue because we conclude that Sterling McCall conclusively established that it made no misrepresentations to Washburn under subsection (b)(11).

*id.* These statements contain enough underlying facts to support a summary judgment award. *See id.* And Washburn has not pointed to any summary judgment evidence to create a fact question as to Sterling McCall's knowledge about the warranty.

Sterling McCall also presented evidence that it did not fail to inform Washburn of a possible restriction on the warranty: (1) deposition testimony from Washburn admitting that Sterling McCall's salesperson told him a lift kit had been installed on the truck; (2) a Buyers Guide initialed by Washburn instructing him to "[c]onsult the manufacturer's warranty booklet for details as to warranty coverage"; and (3) a portion of the manufacturer's warranty booklet stating that the warranty does not cover (a) "any part that was not on the truck when it left the manufacturing plant or is not certified for use on [the] truck"; (b) "the costs of any repairs or adjustments that might be caused or needed because of the installation or use of non-Chrysler parts, components, equipment, materials, or additives"; (c) "[p]erformance or racing parts" or "[r]epairs or adjustments caused by their use"; or (d) alterations, including installing non-authorized accessories and "changing the vehicle's configuration or dimensions." [9] Accordingly, Sterling McCall did not fail to disclose information regarding the possibility that the warranty could be restricted because of the alterations that had been made to the truck.

We conclude that Sterling McCall met its burden to show it did not know about the restriction on the truck's warranty. In this connection, Sterling McCall had no duty to inform Washburn of that which it did not know. *See Steptoe,* 38 S.W.3d at 218. Washburn did not present evidence in response to the summary judgment motion raising an issue of fact as to any such knowledge. Moreover, Sterling McCall showed that it did not fail to disclose information regarding possible restrictions on the warranty. Accordingly, Sterling McCall conclusively established that it did not fail to disclose known material information to Washburn in violation of the DTPA.

### III. No Unconscionable Course of Action

 Washburn finally argues that Sterling McCall engaged in an unconscionable course of action in violation of the DTPA by taking advantage of Washburn's lack of knowledge, ability, experience, or capacity to a grossly unfair degree. *See* Tex. Bus. & Com. Code § 17.45(5) (defining "unconscionable action or course of action" as "an act or practice, which ... takes advantage of the lack of knowledge, ability, experience, or capacity of the consumer to a grossly unfair degree"). Unconscionability under the DTPA is an objective standard for which scienter is irrelevant. *Bradford,* 48 S.W.3d at 760. To prove an unconscionable action or course of action, a plaintiff must show that the defendant took advantage of his lack of knowledge and the resulting unfairness was glaringly noticeable, flagrant, complete and unmitigated. *Id.* Among other things, a showing of the consumer's knowledge, ability, experience, or capacity is required. *Daugherty v. Jacobs,* 187 S.W.3d 607, 616 (Tex. App.—Houston [14th Dist.] 2006, no pet.).

Washburn contends that Sterling McCall took advantage of his lack of knowledge about and experience in the automotive industry by selling him a truck with a restricted warranty *without his knowledge.* But, as discussed, Sterling

---

**9.** There is no evidence in the record or allegation regarding whether the repairs Washburn made to the truck were related to the alterations.

McCall presented conclusive evidence that (1) it informed Washburn about the alterations to the truck and instructed him to consult the manufacturer's warranty for information about coverage, and (2) the warranty states it does not cover alterations or repairs related to alterations. Thus, Sterling McCall established that did not take advantage of Washburn's lack of this knowledge to a grossly unfair degree. Washburn did not present evidence in response raising an issue of fact as to his knowledge.[10] Accordingly, Sterling McCall conclusively established it did not engage in an unconscionable course of action.

### Conclusion

Having concluded that Sterling McCall conclusively established it did not engage in the alleged violations of the DTPA, we overrule Washburn's issues challenging the trial court's grant of summary judgment on his DTPA claims. We affirm the judgment of the trial court.

---

10. Washburn cites deposition excerpts to support his argument that he lacks knowledge or experience in the automotive industry. One portion of the deposition cited is not in the record, and the other portion cited does not support this argument.